UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGERY H. WILLIAMS, | No. C 11-4922 SI (pr) |
| Petitioner, | **ORDER OF DISMISSAL** |
| v. | |
| G. D. LEWIS, warden, | |
| Respondent. | |

## INTRODUCTION

Gregery H. Williams, a prisoner incarcerated at Pelican Bay State Prison, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is now before the court for consideration of respondent's motion to dismiss, which Williams has opposed. For the reasons discussed below, the action will be dismissed.

## BACKGROUND

Williams is serving a 25-to-life sentence on a conviction for first degree burglary with enhancements for prior convictions. His petition does not challenge that conviction.

Williams' petition challenges a disciplinary decision based on an incident that occurred at Pelican Bay on March 13, 2009. The CDC-115 rule violation report dated March 23, 2009, charged Williams with willfully delaying/obstructing a peace officer in the performance of duty. Docket # 1-6, p. 2. Williams was found guilty of the offense and was disciplined. The discipline

imposed included a loss of 90 days of time credits and placement in privilege group "C" for 30 days. *Id.* at 7. Williams asserted in his federal habeas petition that his right to due process was violated in the disciplinary proceedings.

A critical fact that Williams did not mention in his petition was that the time credits that were forfeited were later restored. *See* Docket # 5-2, p. 2; *see also* Docket # 5-1, p. 2. That is, as a result of him staying discipline-free for a specified period of time, the time credits he lost as a result of this offense were restored. The CDC-115 apparently remains in his prison file to document the incident, however.

Respondent has moved to dismiss the petition on several grounds: (1) the petition is moot because the credits lost were restored, (2) the court lacks federal habeas jurisdiction because the disciplinary decision has had no effect on the fact or duration of Williams' confinement due to the restoration of the lost credits, and (3) the petition is time-barred. Williams has opposed the motion. The court need not reach the timeliness issue because the restoration of the time credits results in there being no due process violation.

**DISCUSSION**

Interests that are procedurally protected by the Due Process Clause may arise from two sources – the Due Process Clause itself and laws of the states. *See Meachum v. Fano*, 427 U.S. 215, 223-27 (1976). In the prison context, these interests are generally ones pertaining to liberty. Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital), and *Washington v. Harper*, 494 U.S. 210, 221-22 (1990) (involuntary administration of psychotropic drugs)). The disciplinary decision for Williams did not involve a change so severe as to implicate the Due Process Clause itself.

Deprivations that are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a constitutionally protected liberty interest, provided that the liberty in question is one of "real substance." *See Sandin*, 515 U.S. at 477-87.

2

An interest of "real substance" will generally be limited to freedom from restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"[1] or "will inevitably affect the duration of [a] sentence." *Sandin*, 515 U.S. at 484, 487.

The second kind of interest of real substance – i.e., an inevitable effect on the duration of a sentence – has received scant attention from courts compared with that devoted to identifying "atypical and significant" hardships. Indeed, the most illuminating discussion found for the second kind of interest of real substance is in *Sandin* itself, where the Court explained what does not qualify as such an interest. *Sandin* determined that the possible effect of a disciplinary decision on parole consideration did not show that the disciplinary decision would inevitably affect the duration of the plaintiff's sentence. *See id.* at 487. State law did not require "the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, . . . even though misconduct is by regulation a relevant consideration. . . . The decision to release a prisoner rests on a myriad of considerations. . . . The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.*[2] In sum, the impact of a disciplinary decision on a life inmate's later parole decision is too speculative to say that the decision has the inevitable effect on the duration of confinement that is necessary for federal due process protections to attach.

Upon being found guilty on the CDC-115, Williams was assessed 90 days of behavioral credits. If those credits had not been restored, his time in prison would have been extended an extra 90 days due to the disciplinary decision. But the credits *were* restored and, as a result, the length of Williams' sentence is no longer impacted by the disciplinary decision. The time credit forfeiture imposed on Williams, followed by the restoration of those credits, did not inevitably affect the duration of his sentence. Under the reasoning of *Sandin*, therefore, he had no

---

[1] The discipline imposed included a restriction of Williams' privileges for thirty days, but that does not amount to an "atypical and significant hardship" that would create a protected liberty interest under *Sandin*. Therefore, this prong of *Sandin* is not further discussed.

[2] Although *Sandin*'s discussion pertained to statutes and regulations in Hawaii, California's statutes and regulations also permit the parole authority to consider a wide variety of factors in deciding whether an inmate is suitable for parole. *See* Cal. Penal Code § 3041, 3046; 15 Cal. Code Regs. §§ 2281, 2316-2324, 2422.

protected liberty interest and therefore no federal right to due process in the disciplinary proceedings. Without a federal right to due process, the prisoner cannot state a claim for a due process violation, regardless of whether it is presented in a habeas petition or in a § 1983 civil rights complaint.[3]

The existence of a CDC-115 – regardless of whether time credits are forfeited – in a prisoner's file does not help his chance for parole at a parole suitability hearing. However, the disciplinary record is but one of many factors that go into the evaluation of the parole applicant. Again, *Sandin* guides the analysis, as it recognized that a disciplinary decision that will be one of a "myriad of considerations" in the parole suitability evaluation does not *inevitably* affect the duration of the prisoner's sentence. *Sandin*, 515 U.S. at 487. "The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Id.* California's regulations allow the BPH to consider many circumstances to determine whether the life inmate is suitable for parole. *See, e.g.,* 15 Cal. Code Regs. §§ 2281, 2316-2324, 2422. Prison misconduct may be considered but is not the only circumstance, nor even the paramount one, in determining parole suitability.

To summarize, Williams cannot state a claim for a violation of his rights under the Due Process Clause to the U.S. Constitution because the prison disciplinary decision did not cause a deprivation of a federally protected liberty interest. The decision led to the forfeiture of time credits, but those credits were later restored, so the decision will not inevitably affect the duration of confinement for this indeterminate-sentenced inmate whose parole suitability will depend on a myriad of circumstances.

If no time credits had ever been taken away from Williams, the absence of a due process

---

[3] Several of the cases Williams has cited in his opposition – most notably *Docken v. Chase*, 393 F.3d 1024 (9th Cir. 2004), and pages 858-859 of *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003) – do not answer the question of whether there is a claim for a violation of a constitutional right, such as a right to due process. Rather, they assume the existence of the right and concern which kind of action – habeas or § 1983 – to use to pursue a claim based on the violation of that right. This order does not address whether habeas or § 1983 is the right vehicle for the claim, but instead addresses the antecedent issue of whether there is a constitutional claim at all.

violation would have been obvious. The fact that credits were taken away and then restored should not make a difference in the ultimate conclusion: with a net time credit loss of zero days, Williams has not been deprived of a federally protected liberty interest. If, however, the initial time credit forfeiture meant that there had been a due process violation, the claim for that due process violation was made moot when the credits were restored. Article III, § 2, of the Constitution requires the existence of a "case" or "controversy" through all stages of federal judicial proceedings. This means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Petitions challenging criminal convictions usually do not become moot upon a petitioner's release from custody because collateral consequences are presumed to flow from criminal convictions. *See Spencer v. Kemna*, 523 U.S. 1, 8-12 (1998). The presumption of collateral consequences that avoids mootness does not apply to a challenge to a parole revocation, *see id.* at 13, nor to prison disciplinary proceedings, *see Wilson v. Terhune*, 319 F.3d 477, 481 (9th Cir. 2003). Thus, when the parole revocation term has ended, or the discipline has concluded, the petition may become moot. That is the case here: if ever there was a due process violation, any claim for such a violation became moot when the time credits were restored. By the time Williams filed his federal petition, there was no longer a live case or controversy for the court to decide.

This action is dismissed. In light of the dismissal of this action, petitioner's motions for an evidentiary hearing and for appointment of counsel are DENIED. (Docket # 9 and # 10.) Petitioner's motion for an extension of time to file a reply to respondent's reply brief is DENIED. (Docket # 13.) A reply to a reply brief generally is not permitted, and there is no need for an exception in this case. The court has, however, considered plaintiff's "objections" (Docket # 14) in which he urged that the evidence submitted with the reply brief should be disregarded because the reply brief was untimely. The objections are overruled because respondent's reply brief was not untimely as it was filed by the deadline set by the court in the May 25, 2012 order (Docket # 7).

5

## CONCLUSION

Respondent's motion to dismiss is GRANTED. (Docket # 5.) This action is dismissed because the petition does not state a claim upon which relief may be granted or, alternatively, because any claim for a constitutional violation became moot upon the restoration of the forfeited time credits. The clerk shall close the file.

IT IS SO ORDERED.

DATED: September 10, 2012

SUSAN ILLSTON
United States District Judge

6